IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

U S DISTRICT COURT
Eastern District of Louisiana

TERRANCE WILLIAMS,
    Petitioner,

FILED  MAY 1 6 2005

LORETTA G. WHYTE
    Clerk

vs.

Case No. 03-CV-1079-B
Crim. No. 98-CR-57-1

UNITED STATES OF AMERICA,
    Respondent.
_____/

MOTION TO ALTER OR AMEND JUDGMENT
PURSUANT TO RULE 59(e) F.R.CIV.P.

        Petitioner Terrance E. Williams, pro se, hereby moves

this Honorable Court to alter or amend the judgment entered on

April 26, 2005, or, in the alternative, for relief from that

Judgment pursuant to Rule 59(e) F.R.Civ.P.

I.   INTRODUCTION

        Rule 59(e) F.R.Civ.P. reads:

                (e)Motion to Alter or Amend Judgment.

                Any motion to alter or amend a judgment

                shall be filed no later than 10 days

                after entry of the judgment.[1]

_____

1  Rule 6(a) F.R.Civ.P. reads, in pertinent part: "When the
period of time prescribed or allowed is less than 11 days, in-
termediate Saturdays, Sundays, and legal holidays shall be ex-
cluded in the computation."  Rule 6(e) F.R.Civ.P. provides that
where service is by mail, an additional three days is added to
the proscribed period in which the party has the right to act.

Fee _____
___ Process_____
 X  Dktd_____
 X  CtRmDep_____
    Doc.No._____

II.  JUDICIAL NOTICE

The "ORDER AND REASONS" was not given to Petitioner until **April 29, 2005**, after repeated requests to different Correctional Officers and after Petitioner made contact with this Court's Clerk.  It also should be noted that the pages of the "ORDER AND REASONS" was not stabled together and it is very obvious that someone had copied it, failing to forward Petitioner the original, the one that was stabled together from this Court. On each page of the Order and Reasons that Petitioner received, reflects two dots where the staple holes in the original Order and Reasons would have been.  The holes was not there proving that Petitioner received a copy which was not sent by this court.  The black dots proves this point.  Also, it was a long black line on the left side of each page, from a copy machine.

Petitioner Rule 59(e) motion is timely if filed on or before May 12, 2005.

The Court also should note that to date, Petitioner's motion entitled: "[] MOTION FOR LEAVE TO ADVANCE CASE ASSIGNMENT TRACK TO LEVELS 2 AND 3 FOR DISCOVERY AND APPOINTMENT OF COUNSEL" have not been ruled upon.  Petitioner contentions is that additional discovery would assist him as well as this Court in concluding that he is ACTUALLY INNOCENT of 21 U.S.C. §848.  In any event, Petitioner seeks this court to rule on the discovery motion.

2

GROUND ONE:   PETITIONER IS ACTUALLY INNOCENT OF 21 U.S.C. §848.

The record shows that Petitioner did not organized, super-
vise, or manage five people.  Hence, in this Court's judgment
it made an oversight and concluded that Byron Thomas, Kibibi
Davison, Euclides Jacobo Parra, Darryl Moore, Donald Dyer, and
Alton Patterson were all "controlled" by Petitioner.  Petitioner
will show, by government documents, that it was an oversight
indeed:

Government's Brief in U.S. v. Kibibi Davison, 01-30230

In referring to the facts stated in this brief of the Govern-
ment, Kibibi Davison will be referred to as: "Davison" and/or
"Defendant".  Petitioner will be referred to as "Williams".

This Court also should assume that the facts stated by the
government is in good faith pursuant to Rule 11 of F.R.Civ.P.

> "The Defendant admitted loaning $6,000 to
> Williams ... the money was for rims for his
> car and other things he wanted to do."

(Motion to Expand the Record ("M.T.E.R.") at page 4, n.2).

> "[Aqui] Simpson had learned from Davison about
> William's reputation for violence [citation omitted].
> After some discussion, they decided that Davi-
> son would call Williams and then put Simpson
> on the phone to explain to him (Petitioner)
> **their plan** to make money by **having** Williams
> come to Nashville and rob certain drug dealers,
> something Simpson had done in the past."

(Id. at pg.4).

3

"Simpson testified that Davison and Simpson
were supposed to come to New Orleans that
day, Williams suggested the possibility that
they bring the guns needed for the operation
back to Nashville with them, reffering to
these guns as **"things"** in the tape conversa-
tion. [citation omitted].  The Defendant also
testified that she **assumed** that the word
**"things"** reffered to guns."

(Id. at  pg.5).

"Upon arrival in New Orleans, the Defendant
and Simpson met with Williams **but did not fur-**
**ther discuss the plan to rob dealers in Nash-**
**ville.**"

(Id.).

"Simpson testified that she did not **think** this
meant the plan to rob drug dealers in Nashville
had been abandoned and **felt** that they would go
forward with it at a leter date. [citations o-
mitted].  On the way back to Nashville, Davison
and Simpson were stopped by law enforcement of-
ficers in route who **unsuccessfully** searched for
weapons ("things") previously mentioned in the
recorded conversation."

(Id.)(brackets in original).

"Defendant told FBI Special Agent McMurtrie that

4

while she had been in and out of the room
during the conversation, 'she was aware of
the phone call, the contents of the con-
versations between Aqui Simpson and Terrance
Williams' and that '**the reason for the call
was for Aqui Simpson to discuss with Terrance
Williams the prospect of Terrance coming to
Nashville for the purpose of rock [robbing]
a local Nashville Drug Dealer, who Aqui had
targeted.**"

(Id. at pg.6)(emphasis added)(brackets in original).

Based upon the clear facts from the record, Petitioner
did not "control" i.e. organize, supervise, or manage Kibibi
Davison, as defined in 21 U.S.C. 848.  This Court also found
that Petitioner did not control Davison.  In instructions to
the jury the Court found that:

"Curtis is the individual identified as 'Candy
Man' in the interception conversation where
Williams [was] **enlisted** to come to Nashville
to rob dealers."

(Id. n.6).

The government was indeed aware that Petitioner did not
"control" Kibibi Davison:

"... the statements made by the Defendant were
in further of the conspiracy charge because
they led directly to the **attempt to enlist** Wil-

5

liams to rob drug dealers in Nashville Tenn."
(Id. at pgs.11-12, n.9).

> "The Defendant **is the one who initiated**
> **the call between Simpson and Williams** and
> later vouched for Simpson to Williams when
> he questioned her ability to identify the
> drug dealers to be robbed.  **The defendant**
> **is the one solely responsible for bringing**
> **Williams and Simpson together.**"

(Id. at pg.13).  This Court's judgment should be amended to re-
flect that Petitioner did not "control" Kibibi Davison.

Donald Dyer, also known as "Blabber" is another person
that this Court found Petitioner "controled," organized, super-
vised, or managed.  The Petitioner did not control Donald Dyer.

> "2.  In this instant case, telephone conver-
> sations were intercepted by law enforcement
> officer(s) from February 18 to March 11 of
> 1998.
>
> 3.  These telephone conversations will tell
> the whole story, and that Terrance Williams
> did not organize, supervise, and/or manage me
> in a 'continuing series of violations' as de-
> defined in Titled 21 of United States Code Se-
> ction 848."

(Affidavit of Donald Dyer; attached to Petitioner's "Reply to
Respondent's 'Memorandum in opposition to requests of Terrance

6

Williams for Discovery and Appointment of Counsel 2255 Petition.").

## PERTINENT CALL SUMMARY REPORT
### OF MARCH 11, 1998

Concerning all the intercepted telephone conversations Petitioner was and will be referred to as "TW", "Williams", and/or by part of or his full biological name:

> "Charlie (Euclides Jacobo Parra) tell TW to give money to Byron (Thomas)[2] and they'll have it by Sunday.  TW explains to Charlie that Blabber don't deal like that, Charlie asks TW if they want to give him fifteen and give the rest to Byron.  TW says he would have to talk to Blabber first.  TW tells Charlie Blabber is right there with him.  TW is over heard in background explaining the deal to Blabber.  Blabber says, no, he wants to make sure everything is right.  That everything is right.  TW tells Charlie what Blabber said ..."

(Id. at pg.6).

---

[2]  Byron Thomas also should be excluded as being "controlled" by Petitioner.  The summaries of the intercepted conversations will clearly show Petitioner's contentions.  The summaries will show that Petitioner was not the "go-between" of dealings with Byron Thomas and Euclides Jacobo Parra.

7

In this summary of the intercepted telephone conversations Darryl Moore will be referred to as "Brice":

> "TW asks Brice, 'Charlie had sent you some-
> thing else.  Brice says no.  TW says, 'I
> thought you say you got something new.'
> Brice say he didn't says that.  TW asks,
> 'They lovin' it?'  Brice says, 'Yeah.'
> TW asks, 'what you puttin' on there?'  Brice
> says, 'a two.'  TW asks 'what you had got
> one zone?'  Brice says 'nope.'  TW asks
> 'two?'  Brice says 'there.' (sic) **TW asks**
> **'he just fronted them?"** Brice says 'well
> what he did was (Ilee Journecen) told him
> somebody wanted it and he sent it and WW
> been working it.'  TW laughs and says, 'Big
> Charles stupid.'  TW asks 'he haven't been
> asking about the money?'  Brice says, 'every
> day.' ... **TW asks, 'how Byron (Thomas) met**
> **him (Euclides Jacobo Parra)?'  Brice says**
> **'through me.'  Brice says, 'I meet him through**
> **Jeff.'"**

(Id. at pg.2).

Based upon the records of this case, Donald Dyer, Byron Thomas, Darryl Moore, nor Kibibi Davison can be counted as be-ing controlled by the Petitioner.

PERTINENT CALL SUMMARY REPORT
OF FEBRUARY 19, 1998

The below summary of the intercepted conversations will show that Euclides Jacobo Parra, also known as "Charlie" was not "controlled," organized, supervised, or managed by Petitioner:

> "Charlie says [Brice] and Byron have a different price, with him (Charlie). Says he can work a different price with TW (Petitioner) if he (Petitioner) can pump out 5 or 6 a week. **TW asks 'what about four (4)?'** **Charlie ask 'how you want to buy a week?'** **TW says 'I'll buy five (5).'** Charlie says 'If you can buy five every week. I can work it with you like that.'**

(Id. pg.18).

Petitioner certainly did not "control" Euclides Jacobo Parra.

Misstated Facts by the Court

Donald Dyer:  The Court states that"[t]he record is suffient to establish Dyer ... [was] under Williams control, primarily becuase Williams does not contest their inclusion in his Reply to the Opposition Memo." (Order at pg.14).

In light of a sworn affidavit of Donald Dyer and the above undisputed summary of the intercepted phone conversation further above, this Court should reconsider its "inclusion" as to Donald Dyer--the record is clear that Mr. Dyer was not under Petitioner's "control".

9

Kibibi Davison:  As for Ms. Davison the Court contends that:
it "granted [Petitioner's] request to expand the record to in-
clude the government's brief in <u>United States v. Kibibi Davison</u>,
believing that the memo supports his view that he did not manage
or control Ms. Davison." (Order at pg.11).  The Court went on
contending that "[o]n the contrary, the brief supports that,
while Davison and her co-defendant, Aqui Simpson, may have con-
tacted [Petitioner] with the suggestion that he come to Nashville,
Tennessee where the ladies lived, to commit a robbery of certain
drug dealers, the memo states that Petitioner evolved the plan
from that point on and delegated Simpson and Davison the task
of transporting the guns needed to complete the robberies from
New Orleans to Nashville." (Id. at pg.12).

Special attention should be taken here.  Not only did Kibibi
Davison testify that the $6,000 dollars that she gave Petitioner
was not to "support his heroin operation," but specifically that
**"the money was for rims for his car and other things he wanted."**
(M.T.E.R. at pg.4, n.2).  Ms. Davison further "testified that
she **assumed** that the word "things" referred to guns." (Id. at
pg.5)(emphasis added)(quotations in original).

As clearly shown by the record, the plan by Aqui Simpson
for Petitioner to rob drug dealers in Nashville was abandoned.
No wonder the record is silent concerning the transportation of
"guns".  Petitioner never arranged  for Kibibi Davison and Aqui
Simpson to transport guns to Nashville. (See above testimoney in
Government's Brief in U.S. v. Davison).  However, "Simpson testi-
fied that she did not **"think"** this meant the plan to rob drug

10

dealers in Nashville had been abandoned and **"felt"** that they would go forward with it at a later date." (Id.).

At this point no guns was mentioned. Thus, law enforcement officer listening to Petitioner's telephone conversation believed that the word "things" referred to guns and stopped Ms. Davison and Ms. Simpson's vehicle on the way back to Nashville. Ultimately, the law enforcement officers was wrong in their belief--the search for guns was unsuccessful. Hence, a clear misunderstanding--that the word "things" meant guns. (Id.).

The above record shows that Kibibi Davison should not be counted as being under Petitioner's control, as for there is no evidence that Petitioner "delegated Simpson and Davison the task of transporting [] guns needed to complete the robberies from New Orleans to Nashville."

Euclides Jacobo Parra: This Court based it's contentions on what the government "believes the record shows." (Order at pg. 13). Specifically, that Petitioner "controlled" Euclides Jacobo Parra and Byron Thomas, i.e. "managed and organized the transactions that included Jacobo and Thomas, and that he (Petitioner) was the main contact and "go-between" with Jacobo and Thomas." (Id.).

The above record shows the contrary. Euclides Jacobo Parra, also known as "Charlie," is the source of the herion from New York. Not only did Mr. Parra manage and organize the distribution of his product to Byron Thomas but also to Darryl Moore. The above March 11, 1998 intercepted conversation is very clear on this point: **"TW (Petitioner) asks, 'how Byron (Thomas) met him**

(Euclides Jacobo Parra)?' Brice (Darryl Moore) says 'through me.'
Brice says, I meet him through Jeff.'" (Id at pg.2). Since the record
do not reflect that Thomas or Moore " looked to (Petitioner) for
instructions on whether to rob and/or kill Jacobo and his asso-
ciates after they arrived in New Orleans[,]" as the Court con-
tends, alone with the Court's concession of the mere "buyer-seller
relationship," (Order at pgs.13-14) reconsideration of the judg-
ment is necessary.

Alton Patterson: Without pointing to any record to establish
that Petitioner "controlled" Alton Patterson, the Court contends
simply because Patterson was a "close associate of Williams, [and]
knew of Williams' herion transactions and his plans to rob and/or
murder drug dealers" that Patterson is under Petitioner's control.
The Court continued to find its contentions "primarily because Williams
does not contest their inclusion in his Reply to the Opposition's
Memo." (Id.14).  Based upon the Court finding as well as the clear
facts of the record, it is beyond doubt that Petitioner did not
organize, supervise, or manage Alton Patterson.

Simply put, Petitioner do  not meet the elements to be
charged with the "KING PIN STATUTE," because "it was designed
for leaders of large-scale narcotics operations." U.S. v. Base,
310 F.3d 321,326 (5th Cir. 2002).  That's not the case here, and
based upon the facts of the record that this Court "overlooked",
a reconsideration of the judgment in this case is necessary.
GROUND TWO:  PETITIONER'S COUNSEL WAS INEFFECTIVE.

Petitioner raised multiple grounds contending that his coun-
sels was ineffective, in his 2255 motion. Having shown  that Peti-

12

tioner do not meet the elements of CCE, which in turn shows that he is actually innocent of such, easily makes his ineffective assistance of counsel claims raised in his 2255 motion dead-bang winners.  Petitioner's ground on ineffective assisatnce of counsel should therefore be reconsider for the above stated reasons.

GROUND THREE: PETITIONER'S BLAKELY/BOOKER AMENDMENT IS TIMELY.

At the time of Petitioner's sentencing proceeding, the Court upward departed, increasing Petitioner "statutory maxmum". The relevant "statutory maximum" is not the maximum sentence a judge may impose **after** finding additional facts, but the maximum he may impose **without** any additional findings.  When a judge inflicts punishment that the jury's verdict alone does not allow, or that the defendant did not admit to, all the facts which the law makes essential to the punishment have not been legally established, therefore, the judge exceeds his proper authority. Blakely v. Washington, 124 S.Ct. at 2536-37 (2004).

Relation Back

Petitioner's Blakely/Booker claims relates back to the very first claim in his 2255 motion, labeled as "[A]".  The material issue before this Court concerning the Blakely/Booker concerns two (2) unrelated murders that Petitioner never admitted to nor did a jury find him guilty of beyond a reasonable doubt, yet, this Court upward departed, which exceded Petitioner "statutory maximum".  Petitioner's maximum sentence was 25 years based upon the mandatory nature of the Federal Sentencing Guidelines. Hence, this Petitioner 2255 motion reflects a claim of ineffective assistance of counsel for counsel's failure to withdraw his guilty

13

plea. (Id.).  A reconsideration of the judgment on Petitioner's Blakely/Booker claim should be granted, because, it is clear that the "statutory maximum" for Apprendi[3] purposes, in federal as in states cases, is "the maximum sentence a judge may impose **solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.**" Blakely, supra. at 2537 (emphasis in original).

### CONCLUSION

Based upon the record in this case as well as the legal authority, the judgment of the case should be "altered or amended."

Respectfully submitted,

Terrance E. Williams
#25958-034 Unit 5-B
U.S.P. McCreary
P. O. Box 3000
Pine Knot, KY. 42635

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was deposited in the USP McCReary legal mail-box, addressed to: A.U.S.A., James Letten, 210 Hale Boggs Fed. Bldg., 501 Magazine Street, New Orleans, LA. 70130, on this 6th day of May, 2005.

Terrance E. Williams
Petitioner, pro se

---

3   530 U.S. 466 (2000).

14

